# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

SOUTH ALLEGHENY PITTSBURGH  
RESTAURANT ENTERPRISES, LLC,

        Appellant,

    v.

CITY OF PITTSBURGH ZONING BOARD  
OF ADJUSTMENT,

        Appellee,

and

CITY OF PITTSBURGH,

        Intervenor.

No. SA 17-000526

OPINION AND ORDER OF COURT

Honorable Joseph M. James

Copies Sent To:

Irving S. Firman, Esquire  
Daniel Friedson, Esquire

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| SOUTH ALLEGHENY PITTSBURGH RESTAURANT ENTERPRISES, LLC, | No.   SA 17-000526 |
| Appellant, | |
| v. | |
| ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH, | |
| Appellee, | |
| and | |
| CITY OF PITTSBURGH, | |
| Intervenor. | |

## OPINION

James, J.                                                                                       May 15, 2018

This appeal arises from the decision of the City of Pittsburgh Zoning Board of Adjustment ("Board") dealing with Property located at 2200 East Carson Street in a Local Neighborhood Commercial (LNC) zoning district in the South Side Flats neighborhood of the City of Pittsburgh, owned by Khalil Real Estate, Inc. Appellant South Allegheny Pittsburgh Restaurant Enterprises, LLC ("SAPRE") leases the

basement and first floor of the structure. The gross floor area of the first floor is 2,458 square feet. Those floors of the building are the subject of this appeal.

In June of 1984, SAPRE was granted a special exception to use a portion of the basement and first floor of the building for a restaurant and bar. A portion of the basement would be used for storage and a maximum of three video game machines. The Board stated that the approval was subject to the condition that no live entertainment was to take place on the Property. An April 24, 1985 Certificate of Occupancy permitted "restaurant first floor and basement for storage plus maximum of three video game machines and five leased parking spaces at E. Carson Street and 23rd Street." An October 21, 1986 Certificate of Occupancy permitted use of the first floor as a restaurant, in accordance with the prior zoning approval and the addition of four residential units on the upper floors with the fourth floor to remain sealed and vacant. In 1995, the Board approved a special exception to allow for a sidewalk café, subject to the issuance of a sidewalk encroachment permit. In 2016, SAPRE applied for permits to open a business at the Property. They submitted plans to the Department of Permits, Licenses and Inspections ("PLI") which depicted a kitchen, patron seating and a dance floor. In August or early September of 2016, Maura Kennedy, the PLI Director became aware that the Property was not operating in compliance with its existing Certificates of Occupancy. Advertising materials described Mother Fletcher's as the "biggest Under-21 party in the Tri-State area" with the "craziest crowds in Pittsburgh" with no mention of food or beverages. Just after midnight on September 4, 2016, Mark Mariani Assistant Director of Operations for PLI, conducted a compliance check to

determine whether the Property was being operated as a restaurant and if there were any Code violations. After walking the floor plan, Mr. Mariani determined that the Property was operating as a night club and not as a restaurant in compliance with its Certificate of Occupancy. He concluded that immediate closure was appropriate and posted a Stop Work Order/Cease Operations Order placard on the Property. On September 30, 2016, SAPRE filed a protest appeal from the Stop Work Order/Cease Operations Order with the Board alleging that the business was improperly shut down. The Board held a hearing on February 2, 2017 but did not complete its decision within 45 days which resulted in a deemed denial of SAPRE's appeal. SAPRE appealed the deemed denial to this Court. This Court ordered the Board to release its findings. The Board's September 28, 2017 decision concluded that PLI correctly determined that the Property was not operating as a restaurant and denied SAPRE's appeal. SAPRE filed a separate appeal of the Board's decision seeking either a reversal of the deemed denial or a *de novo* hearing before the Court of Common Pleas. The two appeals have been consolidated and are before this Court.

Pursuant to this Court's November 28, 2017 Order of Court, the standard of review in this case is *de novo*. The Court makes the following Findings of Facts.

Restaurant (General) uses are permitted as a special exception in LNC zoning districts.

Section 911.02 of the Code defines Restaurant as:

An establishment where the principal business is the sale of food in a ready to consume state, where there is no service to a customer in an automobile, and where the design or principal methods of operation consist of one (1) or more of the following:

1. A sit down restaurant where customers are normally provided with an individual menu, are generally served food in non-disposable containers by a restaurant employee at the same table or counter at which the food and beverage items are consumed or

2. A cafeteria or cafeteria type operation where food and beverage generally are served in non-disposable containers and are consumed within the restaurant. But not including Social Club.

The Code defines and classifies the Restaurant use into two types of categories: Restaurant (General) and Restaurant (Limited).

A. Restaurant (Limited) means a Restaurant with a gross floor area of less than 2,400 square feet that does not have live entertainment or dancing.

B. A Restaurant (General) is defined as a Restaurant with a gross floor area of 2,400 square feet or more or one that has live entertainment or dancing.

On September 4, 2016, Mr. Mariani erred in shutting down the business without prior notice or an opportunity for a hearing where there was no dangerous or emergency situation on or around the premises. Zoning Code Section 924.05.B (Immediate Enforcement) provides the requirements to issue a cease operations order without notice or a hearing. It states: "In the case of a violation involving either continuing construction or development or an emergency situation (as reasonably determined by the Chief of the Bureau of Building Inspection or appropriate Code Official), the City may use the enforcement powers and remedies to it under this chapter without prior notice."

The City did not provide sufficient evidence of an emergency where there could be imminent harm giving rise to shutting down the business without prior

notice or an opportunity for a hearing. Mr. Mariani testified that based on the flyer and the underage individuals, he believed there could be imminent harm. Mr. Mariani inspected the Property upon the direction of Ms. Kennedy. She testified that she wanted an inspection of the Property because the establishment was advertising dangerous happenings. She stated that she directed Mr. Mariani to close the business if he discovered any dangerous life/safety issues at the Property. However, Mr. Mariani testified that when he arrived at the premises, he observed the atmosphere outside of the Property to be docile and calm. He also stated that the police had not received any complaints and he did not witness any disturbances or unruly behavior. After making those observations and returning with police officers, Mr. Mariani entered the premises. Upon entering, he saw five to seven people who he believed to be employees and not patrons. He stated that he saw high top tables and stools. He testified that he did not see any alcohol. As for food, Mr. Mariani said that he saw a rack with potato chip bags. He admitted that he did not look behind the bar to see if there were non-disposable glasses and plates. He explained that he did not see any occupancy violations, blocked exits or passageways or building code violations. Even still, he informed SAPRE's President, Brandon Firman, that the business was closed. Mr. Mariani stated that he believed the premises was not functioning like a restaurant and therefore it was being shut down. Mr. Mariani further explained that he issued the cease operations order based upon the belief that it was an emergency where there could be imminent harm based upon the flyer and the underage individuals. Finally, Mr. Mariani testified that he closed the business due to (1) his determination that the

business was not operating as a restaurant and (2) that although there were no customers and he observed no life/safety code violations, there could be imminent harm faced by potential underage customers based upon an advertising flyer. Given his explanations, the Court finds that Mr. Mariani issued the Stop Work Order/Cease Operations Order in error. There may be a valid question as to whether Mr. Firman's business is properly operating as a restaurant. If the City wishes to pursue that, they need to follow the proper procedure.

The City claims that SAPRE was not operating its business at the Property as a restaurant in compliance with the Code or the existing Certificate of Occupancy. Even if this is true, issuing a cease operations order without notice or a hearing is not the proper remedy. As stated above, Mr. Mariani's inspection found no prepared foods except bags of potato chips. SAPRE claims that they sold potato chips, pop tarts, pretzels and a variety of non-alcoholic beverages. SAPRE claimed that food was served on non-disposable plates but Mr. Mariani did not look behind the bar to check.

SAPRE also claims that they had a vested right in the use of the Property as a Restaurant (General). However, SAPRE has waived this issue because it has been raised for the first time on appeal.

SAPRE also argues that the City failed to follow its own procedures and refused to stay the Enforcement Proceedings pending the hearing before the Board. As stated above, the City erred in issuing a cease operations order without notice or a hearing. The City did not provide evidence of dangerous or emergency situations on or around the premises and therefore Mr. Firman should have be able

to operate pending the outcome of the hearing.

Based upon the foregoing, the City's determination to close the business without prior notice was in error. The record developed before the Board and this Court is inconclusive and inadequate to support the City's position that Mr. Firman's business was not operating as a Restaurant. The Stop Work Order/Cease Operations Order is set aside.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| SOUTH ALLEGHENY PITTSBURGH RESTAURANT ENTERPRISES, LLC, | No. SA 17-000526 |
| Appellant, | |
| v. | |
| ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH, | |
| Appellee, | |
| and | |
| CITY OF PITTSBURGH, | |
| Intervenor. | |

## ORDER OF COURT

AND NOW, this 15th day of May 2018, based upon the foregoing Opinion, it is Ordered that the City's Stop Work Order/Cease Operations Order is set aside.

By the Court:

/s/ [signature]