**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOUTH ALLEGHENY PITTSBURGH | ) | |
| RESTAURANT ENTERPRISES, LLC, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | No. 2:16-cv-01393-NBF |
| vs. | ) | |
| | ) | |
| CITY OF PITTSBURGH, et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT UNDER FED R. CIV. P. 12(b)(6)**

Defendants City of Pittsburgh, City of Pittsburgh Department of Permits, Licenses and Inspections, Mark Mariani, and the Zoning Board of Adjustment respectfully submit this brief in support of its Motion to dismiss all claims against them Plaintiff's ("SAPRE") Second Amended Complaint.

## I.     Introduction

42 U.S.C. § 1983 authorizes a private suit to redress violations of constitutional and other federally protected rights, not zoning disputes. As the Court noted in dismissing Plaintiff's due process claims in its original Complaint for lack of ripeness, such a lawsuit "cannot be utilized to convert 'federal courts into super zoning tribunals.'" ECF No. 22 at 25 (quoting *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004)). The Court further noted that it is "apparent from the record that the status quo between the parties is that the first floor of 2200 East Carson Street is currently bound by the use authorization provided in the 1984 special exemption, whereby a restaurant with no live entertainment may be operated on site." *Id.*

On May 17, 2017, this Court ordered this case stayed pending the disposition of Plaintiff's appeal to the Zoning Hearing Board and any further appeals to the Court of Common Pleas of

1

Allegheny County. (ECF No. 54). Plaintiff subsequently filed its Motion to Lift Stay after the completion of its appeal process with the Court of Common Pleas of Allegheny County. (ECF No. 59). Plaintiff's Second Amended Complaint was filed on July 17, 2018, alleging violations of its right to due process and other Constitutional claims, arising from the City's September 4, 2016 "stop work/cease operations" order directed to Plaintiff's underage nightclub operating under the name of Mother Fletcher's.

Defendants respectfully request that the Court dismiss all claims against them. Plaintiff has obtained a review of the zoning issues it complained about, via the established procedures available under state and municipal law. The Zoning Board unanimously confirmed the City's decision; while the Court of Common Pleas disagreed and set aside that decision. Such an outcome is how the process works; imposing liability on the City afterwards would effectively make the City a business-interruption insurer for parties like Plaintiff. That outcome is not required under well-established federal law.

## II.      Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must allege facts that "'raise a right to relief above the speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "After *Iqbal,* it is clear that conclusory or 'barebones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F. 3d

2

203, 210 (3d. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *see also White v. Hon Co.*, 520 F. App'x 93, 95 (3d. Cir. 2013) (noting that, after *Twombly* and *Iqbal*, a plaintiff "[can]not attempt to use discovery as a fishing expedition to determine the existence of … facts necessary to establish a legally adequate [claim]").

### III.   Argument

#### A. Plaintiff's Procedural Due Process Claim is without merit and should be dismissed.

##### i.   Plaintiff lacks a constitutionally protected property interest that was violated by the city.

SAPRE did not have an absolute protected property right to engage in operating an underage nightclub; rather, that operation was subject to conditions in the City Zoning Code, including among others Section 924.05.B ("Immediate Enforcement"), which provides:

> In the case of a violation involving either continuing construction or development or an emergency situation (as reasonably determined by the Chief of the Bureau of Building Inspection or the appropriate Code Official), the City may use the enforcement powers and remedies available to it under this chapter without prior notice. Simultaneously with beginning enforcement action, the Chief of the Bureau of Building Inspection or the appropriate Code Official shall send notice to the owner of the land and to any person who is a party to the agreement or an applicant for any relevant permit, certificate or approval.[1]

On its face, this provision confers broad powers of enforcement granting a substantial amount of discretion to City officials.

"Neither the general ability to do business free from regulation nor the ability to make a profit is a property right subject to protection from deprivation under the Due Process Clause." *See College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (noting that "business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense") (internal emphasis

---

[1] The Bureau of Building Inspection is now the Department of Permits, Licenses, and Inspections.

omitted)." *Dean v. Town of Hamden*, 164 F. Supp. 3d 293, 303 (D. Conn. 2016) (awarding

summary judgment to officials on claims of due process and equal protection brought by nightclub

owner). As the court in *Dean* noted, "even assuming that plaintiffs were victims at all of a

deprivation, the cease-and-desist order did not deprive them of a cognizable property right." *Id.*

Regarding the nightclub's due process claim in that case, the court stated:

> In the context of constitutional due process challenges to governmental regulatory
> action, a property right must be more than a hope or expectation for favorable
> governmental action but a clear and mandatory entitlement. "The procedural
> component of the Due Process Clause does not protect everything that might be
> described as a 'benefit': 'To have a property interest in a benefit, a person clearly
> must have more than an abstract need or desire' and 'more than a unilateral
> expectation of it. He must, instead, have a legitimate claim of entitlement to it.'"
> *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d
> 658 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577,
> 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Harrington v. County of Suffolk*,
> 607 F.3d 31, 34–35 (2d Cir.2010) (same). Moreover, "[s]uch entitlements are not
> created by the Constitution but, '[r]ather, they are created and their dimensions are
> defined by existing rules or understandings that stem from an independent source
> such as state law.'" *Id.* at 34 (quoting *Castle Rock*, 545 U.S. at 756, 125 S.Ct. 2796).
>
> * * * *
> As the Supreme Court has observed, "a benefit is not a protected entitlement if
> government officials may grant or deny it in their discretion." *Castle Rock*, 545
> U.S. at 756, 125 S.Ct. 2796. Because the Town's ordinance leaves considerable
> discretion to the Town's police chief to approve the activities within the scope of
> the cease-and-desist order, plaintiffs had no property right to engage in these
> activities. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 60 (2d Cir.1985)
> ("Since plaintiffs were not entitled as a matter of right to the ZBA certificate of
> location approval sought by them and there is no allegation that but for the ZBA
> members' alleged misconduct the ZBA would have been required to award them
> the requested certificate, they lack any property interest protectable under the Due
> Process Clause."). Accordingly, plaintiffs' procedural due process claim fails for
> lack of a showing that they were subject to a deprivation of a property right that is
> subject to protection under the Due Process Clause.

*Id.* at 304.

Plaintiff has contended that the property interest affected in this matter is Plaintiff's right

in operating a business. But the business always operates subject to the discretion afforded DPLI

4

by the above provision of the Zoning Code, as well as the other applicable conditions precedent to issuance of the appropriate permits. Similarly, in the *Germantown Cab* case, the cab company at issue held an underlying certification to operate, and when it was placed out of service, suffered an "[i]mmediate and temporary prohibition from the exercise of rights granted by the" Philadelphia Parking Authority. *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. CIV.A. 14-4686, 2015 WL 1954163, at *9 (E.D. Pa. Apr. 30, 2015). Nonetheless, the district court rejected the argument that the cab company had a constitutionally protected property right: "Germantown's CPC [i.e., the operating certificate] was not guaranteed under [any] state law or administrative policy, because rights in CPCs expire annually; renewal is not automatic; and the PPA has the discretion to deny a renewal of rights." *Id.* at *7 (citations, internal quotation marks omitted).

Given the legal provisions at issue in this case, including the authority and discretion granted by Section 924.05.B, Plaintiff lacks a basis to claim that it had a constitutionally protected property interest and that its procedural due process rights were violated.

### ii. Notice and opportunity to be heard provided to Plaintiff are sufficient to meet constitutional requirements.

It is hard to credit Plaintiff's argument that the notice here was inadequate, when Plaintiff's actions — and the actions of the attorneys promptly pressed into service on its behalf — prove the point that Plaintiff had no trouble grasping the existence and nature of the pending governmental action. As the *Germantown Cab* case stated, following well-established principles on the flexible nature of due process:

> "'[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Biliski*, 574 F.3d at 220 (quoting *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). Instead, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Gilbert*, 520 U.S. at 930). Indeed, although "[t]he Supreme Court 'consistently has held that some kind of hearing is required at some time before a person is finally deprived of his

property interests,'" *Graham v. City of Philadelphia*, 402 F.3d 139, 145 (3d Cir.2005) (quoting *Craft*, 436 U.S. at 16), it "has rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property." *Biliski*, 574 F.3d at 220 (alteration in original) (quoting *Gilbert*, 520 U.S. at 930); *see also Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir.2011) ("Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.' " (alterations in original) (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir.2005))).

2015 WL 1954163, at *7. Here, the placards posted on the business in the early morning hours of September 4, 2016, provided fair notice that Plaintiff was not in conformance with the City Zoning Code:

> The Supreme Court has long held that "posting notice on real property is 'a singularly appropriate and effective way of ensuring that a person ... is actually apprised of proceedings against him." *Jones*, 547 U.S. at 236. As we have stated previously, the due process clause does not require that the Plaintiff has actually received notice, but that the government provided notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Physically posting notice on the condemned property has long been held to be an independently sufficient and entirely reasonable means of notifying a plaintiff of the proceeding against the property . . . .

*Jean v. Gerardi,* No. 4:10-CV-1568, 2012 WL 1604872, at *5 (M.D. Pa. May 8, 2012) (awarding summary judgment to defendants on procedural due process claims, following the demolition of a garage that followed by about two or three days the posting of a placard on the property).

As in *Germantown Cab*, the process provided to Plaintiff in this case satisfies the familiar three-prong test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, the private interest is diminished because, "a temporary suspension, even one resulting in the loss of income, is considered to be "'relatively insubstantial' as compared to the 'severity of depriving someone of the means of his livelihood." 2015 WL 1954163, at *8 (quoting *Espinosa v. Cnty. of Union*, 212 F. App'x 146, 155 (3d Cir. 2007) (quoting *Gilbert v. Homar*, 520 U.S. 924, 932 (1997))). In addition, the modest number of opening hours of Plaintiff's intended business — only two nights

per week, for a total of perhaps eight hours — is such that Plaintiff's private interest is further diminished, since Plaintiff's potential revenue is already lower as compared to a business open five or seven days per week.

Second, the City has an unquestionably strong interest in securing the public safety of large crowds of people on the streets of the South Side, in a location that is a known hotspot for trouble — referring not merely to troubles associated with the closed Margaritaville establishment, but to the continuing police and incident reports, and constituent concerns, from the surrounding environs placed in the record before the Court. This interest is heightened when underage youth and children as young as fifteen may be involved.

Third and finally, the risk of erroneous deprivation is tolerable under due process principles. The Zoning Board of Adjustment issued a decision which was appealed by Plaintiff to the Allegheny County Court of Common Pleas. There, Judge James set aside the decision of the Zoning Board of Adjustment and determined that there was no "dangerous or emergency situation" and that the City ultimately erred. Simply because Judge James set aside the Zoning Board of Adjustment's decision does not amount to a violation of Plaintiff's procedural due process rights. Just as this Court's decisions may be reversed or otherwise critiqued by the Third Circuit (which of course itself is subject to the same treatment by the U.S. Supreme Court), that does not mean that the initial decision rises to the level of a denial of due process. To the contrary, the error-correction function provided by an appellate procedure is how the system works, not evidence that any party's constitutional rights are being infringed upon. The City should not have to face the burden of litigating a federal lawsuit every time a decision of the Zoning Board may be set aside (and in particular, there is no basis for making the Zoning Board itself a defendant in such a suit). Thus Plaintiff's procedure due process claim should be rejected without further delay.

**B.  Plaintiff's Substantive Due process rights have not been violated.**

Substantive due process rights generally fall into two categories: first, regarding sensitive areas like the right to personal autonomy and "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality op.); or second, as a kind of "residual protection against egregious government wrongdoing." Fed. Jud. Ctr., Section 1983 Litigation 40 (3d ed. 2014). However, if a plaintiff is challenging the second category of governmental action, there is a high bar to liability. The test is whether the governmental conduct "shocks the conscience," which is a fact-specific inquiry. *See United Artists Theatre Circuit Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). This standard prevents the courts from "being cast in the role of a 'zoning board of appeals.'" *Id.* at 402. Further, the Third Circuit stated that "land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *Id.*

Here, the City was entitled by City Code to determine if there was an emergency need to close the business. The primary reason for this was a number of city officials' concern for the minor patrons' safety when the business closed in the early hours of the morning on East Carson Street. DPLI is empowered by Section 924.05.B of the City Code and case law to take emergency action to avert future injuries.[2] While Judge James held that there was no emergency, this Court cannot look to this with the benefit of 20/20 hindsight. To hold otherwise would be to cripple the ability of City officials to take necessary, prudent steps to deal with imminent public-safety concerns, and would deny them the discretion to make reasonable judgment calls about which

---

[2] Judge James held that there was no emergency when he set aside the Zoning Board of Adjustment's Decision. *See* Allegheny County Dkt. No: SA-17-000526.

course of action to take — even if affected parties like Mother Fletcher's or a court might, perhaps with hindsight, prefer a different choice. *See Catanzaro v. Weiden*, 188 F.3d 56, 62-63 (2d Cir. 1999) ("The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable."); *see also Elsmere Park Club, L.P. v. Town of Elsmere,* 542 F.3d 412, 418 (3d Cir. 2008) ("[W]e adopt the test laid out by our colleagues in the Second Circuit: where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . [,] the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion.") (internal quotation marks omitted; alteration in original). This does not rise to the level of a Substantive Due Process claim.

Further, Plaintiff alleges injury to "the business interests of the SAPRE," ECF No. 67 at 24, ¶ 160-64, and argues that the decision "does not serve any rational land use purpose." *Id*. Plaintiff further alleges that the City's actions are only to punish for previous tenants' wrongdoings, an allegation of improper motive. These allegations of improper executive action are not outrageous enough to have violated Plaintiff's substantive due process rights. The above case law controls here, leaving land-use decisions to local authority, and not allowing a plaintiff to claim improper motive and therefore turn this dispute into a substantive due process claim. Thus Plaintiff's claim that its Substantive Due Process rights were violated should be dismissed.

### C. Plaintiff's Fourth Amendment claim of an illegal search is unfounded and should be dismissed.

Plaintiff's Fourth Amendment claim under these circumstances is without merit. Mother Fletcher's was open for business when City officials arrived. In *Maryland v. Macon*, 472 U.S. 463, the Supreme Court concluded that officers' entry into a business was not a Fourth Amendment search because "entering the bookstore and examining the wares that were intentionally exposed to all who frequent the place of business did not infringe a legitimate expectation of privacy." *Id*. at 469. The Third Circuit has affirmed the holding of the *Macon* Court in that there is no reasonable expectation of privacy in areas of a business where the public is invited to enter and to transact business. See *United States v. Watson*, 244 F. App'x 484, 488 (3d Cir. 2007). Besides the inflammatory references to a "raid" (ECF No. 67 at 8), there are no plausible factual allegations that City officials intruded into the business any more than legally permitted another member of the public.

Therefore, SAPRE cannot allege that it had a reasonable expectation of privacy that was improperly violated. Additionally, the City was reasonably exercising its emergency powers because of the potential harm/threat to minors on Carson Street at that time of the morning, and the need for inspection was reasonable when considering the ultimate goal of the enforcement - to protect minors. Thus Plaintiff's Fourth Amendment claim should be dismissed.

>    **D.  Plaintiff's Equal Protection claim is unfounded because it is not a member of a protected class and Plaintiff has not been treated differently than similarly situated establishments.**

Plaintiff admits in its Second Amended Complaint that it is not a member of a protected class. ECF No. 67 at 22, ¶ 176. Plaintiff does allege that the City has purposefully discriminated against SAPRE. *Id.* Plaintiff attempts to support this legal conclusion by citing different properties in the City that are zoned as a restaurant, but that do not primarily serve food. *Id.* at 6-7. However, Plaintiff's "restaurant" is not similarly situated to any other establishment in the City; it is unique,

because it is specifically geared toward minors younger than 21 years old. Even assuming that the City has treated Plaintiff differently than other establishments, the City at least has a rational basis for this treatment.

*Dean v. Town of Hamden*, 164 F. Supp. 3d 293 (D. Conn. 2016), is useful precedent for this Court to consider, since it also involves a nightclub owner complaining about being unlawfully shut down by town officials who cited public-safety concerns. In the *Dean* case, a zoning enforcement officer issued a cease-and-desist order to the nightclub (called the "Point After"), directing it to stop "all live entertainment with a dance floor." *Id*. at 297. The nightclub appealed the order through the state courts, which ultimately vacated the order and found for the plaintiff club (in part because the grounds upon which the zoning board of adjustment had upheld the order changed, and the plaintiffs had lacked proper notice of such grounds). *Id*. at 298. Despite winning the state-court actions, the nightclub later went out of business. *Id*. The nightclub owner sued the Town of Hamden, the town's zoning board of appeals, the chief of police, and a zoning enforcement official, alleging the town officials violated the nightclub's rights to equal protection and procedural due process. The court awarded summary judgment to Defendants on all counts. Notwithstanding the nightclub's victories in state court, the federal court had no trouble finding that the club owner's federal constitutional rights had not been violated.

The court's first ruling on the equal protection claim is instructive here. The Point After's owner claimed that it was a "prototype" that was claimed to be "'fairly unique' as compared to other clubs in Hamden." *Id*. at 300. Therefore, the court determined, there was no basis for a jury to evaluate comparator establishments and thus the club's equal protection claim failed. In the

present matter, Mother Fletcher's is uniquely an underage nightclub and therefore lacks any plausible claim to violation of its rights to equal protection.[3]

### E. Plaintiff's Eighth Amendment claims should be dismissed because this is not a criminal prosecution or punishment, nor is it a civil forfeiture.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const, amend VIII. The Supreme Court has traditionally applied the Eighth Amendment to criminal prosecutions and punishments. *See Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262 (1989). The Supreme Court has also noted the lack of authority on the "excessive fines" clause:

> This Court has had little occasion to interpret, and has never actually applied, the Excessive Fines Clause. We have, however, explained that at the time the Constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989). The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993) (emphasis deleted). Forfeitures—payments in kind—are thus "fines" if they constitute punishment for an offense.

*United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998).

Here, the property has not been forfeited in any way, nor has Plaintiff contended that it is subject to some amount of money being imposed as a fine. Instead, Plaintiff's theory is that it is victim to "the fine of closure." ECF No. 67 at 23, ¶ 189. Defendants respectfully suggest that no authority exists that would justify the Eighth Amendment being invoked as a remedy for such an alleged offense, as the result of a City's zoning enforcement. *See Recreational Developments of*

---

[3]In fact, at the hearing before this Court, SAPRE's representative, Mr. Brandon Firman, when asked if his establishment was "unique with your concept," testified: "Certainly, yes." This testimony was then revisited by Plaintiff's own attorney: "Q. Mr. Firman, you indicated that your restaurant is unique? A. Yes." Sept. 12, 2016 Hr'g Tr. 104:18-19, 104:25-105:2.

*Phoenix, Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1101 (D. Ariz. 1999) ("Plaintiffs have offered no authority for the notion that the Excessive Fines Clause applies to non-forfeiture civil cases in which the penalty is closure of a business rather than payment of fines to the government. Therefore, Plaintiffs' Eighth Amendment claim is without merit and will be dismissed."), *aff'd*, 238 F.3d 430 (9th Cir. 2000). And even assuming the property had been forfeited, Plaintiff is not the property owner, and therefore lacks standing to make such a claim.

### F. Defendant Mark Mariani should be dismissed from the lawsuit because he is entitled to qualified immunity.

Mark Mariani, a senior official with the City's DPLI, is the only Defendant sued as an individual in this case. He is entitled to qualified immunity and should be dismissed from the suit. Qualified immunity is not simply a defense to liability; rather, it completely protects an official from suit and, therefore, should be "considered at the earliest possible stage of the proceedings." *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). In addition, the question of qualified immunity is properly answered by the court, because it is a question of law, not fact. *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). An official will be stripped of qualified immunity only if he (1) violates a constitutional right and (2) that right was "clearly established" at the time of alleged violation. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The burden rests with a plaintiff to point to controlling precedent that places the alleged right beyond debate. *See Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014); *Wilson v. Layne*, 526 U.S. 603 (1999). Defendant Mariani acted reasonably in exercising his duties in enforcing the City's Zoning Code and, even assuming that Plaintiff suffered a violation of its constitutional rights, there is no controlling precedent that could justify holding him personally liable for any such violations. Therefore, he should be dismissed from this lawsuit.

## IV.     Conclusion

Defendants City of Pittsburgh, City of Pittsburgh Department of Permits, Licenses and Inspections, Mark Mariani, and the Zoning Board of Adjustment respectfully request that all claims against them in Plaintiff's Second Amended Complaint be dismissed with prejudice, as an amendment has already been allowed and further amendment would be futile and unfairly prejudicial to the City. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (amendment may be denied if "inequitable or futile").


Respectfully submitted,

YVONNE S. HILTON, Esq.
Acting City Solicitor

s/ Matthew S. McHale, Esq.
Matthew S. McHale (Pa.I.D. No. 91880)
Associate City Solicitor
City of Pittsburgh Dept. of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255-2025
matthew.mchale@pittsburghpa.gov
*Counsel for Defendants*