**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOUTH ALLEGHENY PITTSBURGH RESTAURANT ENTERPRISES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, CITY OF PITTSBURGH DEPARTMENT OF PERMITS, LICENSES AND INSPECTIONS, MARK MARIANI, and ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 16-1393<br>Judge Nora Barry Fischer |

## <u>MEMORANDUM OPINION</u>

### I.   INTRODUCTION

This matter involving Plaintiff South Allegheny Pittsburgh Restaurant Enterprise's, ("Plaintiff"), challenge to a Stop Work Order issued by the City of Pittsburgh resulting in the closure of "Mother Fletcher's Under 21 Party Joint" on the South Side returns to the Court on a motion to dismiss filed by Defendants the City of Pittsburgh, ("City"), City of Pittsburgh Department of Permits, Licenses and Inspections, ("DPLI"), Mark Mariani, ("Mariani'), and the Zoning Board of Adjustment of the City of Pittsburgh, ("Zoning Board"), (collectively, "Defendants"), and Plaintiff's opposition thereto. (Docket Nos. 68-70). The instant Motion has been fully briefed and neither party requested oral argument, making it ripe for disposition. (*Id.*). After careful consideration of the parties' positions, and for the following reasons, Defendants' motion [68] is granted.

### II.   BACKGROUND

As the Court writes primarily for the parties and the facts of this matter are set forth in its

prior Memorandum Opinion, the Court focuses on those factual allegations relevant to the disposition of the pending motion. (Docket No. 22); *South Allegheny Rest. Enterprises, LLC ("SAPRE") v. City of Pittsburgh*, 2016 WL 4962926, at *1 (W.D. Pa. Sept. 16, 2016).

Plaintiff leased the former Margaritaville[1] space at 2200 East Carson Street in 2016 and its owner Brandon Firman spent significant funds during the summer months rehabilitating the interior to transform it into Mother Fletcher's. (Docket No. 67 at ¶¶ 12, 17, 46) The prospective business catered to individuals under the age of 21, would not serve alcohol and would have a dance floor where patrons could dance to recorded music. (*Id*. at ¶¶ 14-16). Plaintiff received various permits and approvals from the DPLI to complete the construction and renovation work. (*Id*. at ¶¶ 46-54). Plaintiff did not obtain a new certificate of occupancy for the property as to the specific use for the property as Mother Fletcher's. (*Id*. at ¶ 23). Rather, Plaintiff relied upon the existing certificate of occupancy for the property issued on October 21, 1986 authorizing a "first floor restaurant" under a special exemption granted by the Zoning Board in 1984 authorizing the use of the first floor and basement of the property as a bar and restaurant with a condition of no live entertainment. (*Id*. at ¶¶ 23-27; Docket Nos. 67-1, Ex. "A"; 67-2, Ex. "B"). Plaintiff maintains that the special exemption "runs with the land" and remains effective. (Docket No. 67 at ¶ 27).

Plaintiff advertised the opening of Mother Fletcher's on social media and the business had its grand opening on Friday, September 3, 2016 at 9:00 p.m. (Docket No. 67 at ¶ 55). Mother Fletcher's had 70 patrons that evening, all of whom were "respectful, peaceful, and not causing any disturbances." (*Id*. at ¶¶ 56-57). The number of patrons was significantly below the occupancy limit for the property throughout the evening. (*Id*. at ¶ 68). Plaintiff avers that there

---

[1] Neither Plaintiff nor Firman have any connection to Margaritaville, which was designated as a nuisance bar before it was shut down by the City. (Docket No. 67 at ¶¶ 13-14); *SAPRE*, 2016 WL 4962926, at *2.

were no incidents of any kind which would have necessitated law enforcement to respond to the property. (*Id*.).

Plaintiff alleges that Mariani and City of Pittsburgh Bureau of Police Sargent Eric Baker parked across the street from Mother Fletcher's at around 12:15 a.m. on September 4, 2016. (Docket No. 67 at ¶ 58). However, they did not witness any "emergency conditions such as fights, theft, armed robberies, public intoxication, drunk driving, traffic violation or unruly behavior." (*Id*. at ¶¶ 59, 93). They briefly left their post and drove a few blocks away to the Zone 3 police station near 18th Street where they met with a larger group of officers. (*Id*. at ¶ 60). Mariani and Sgt. Baker returned approximately 20 minutes later along with a total of 28 officers and other individuals in four separate vehicles. (*Id*. at ¶ 63). They were not responding to any specific complaints relating to noise at Mother Fletcher's nor the conduct of its patrons. (*Id*. at ¶ 62).

Plaintiff contends that Mariani, the police officers and other DPLI officials "stormed" the restaurant at 12:35 a.m. on September 4, 2016 without notice or probable cause and did not provide Plaintiff the opportunity to stop them. (Docket No. 67 at ¶ 63). They further aver that at the time of this entry, all of Mother Fletcher's patrons had left for the evening; hence, they did not witness any unruly behavior and observed a "docile" scene. (*Id*. at ¶¶ 67, 92). There were also no violations of the fire code, building code or other safety violations at Mother Fletcher's which were observed by Mariani and the officers. (*Id*. at ¶ 89).

According to Plaintiff, Mariani initially refused Firman's requests for an explanation as to why they had entered the property. (Docket No. 67 at ¶ 69). Mariani later explained that: Mother Fletcher's was not operating as a restaurant; he was shutting down the business; and, Firman could take up his complaints with the City. (*Id*. at ¶¶ 71-74). Mariani admitted that he

did not know the specific definition of restaurant under the City's zoning code but shut down Mother Fletcher's because it "did not look like an Eat N Park." (*Id*. at ¶¶ 74-76). Mariani issued a Stop Work/Cease Operations Order to the business and it has remained closed since that time. (*Id*. at ¶¶ 18-19; 94). Plaintiff maintains that the Stop Work Order was issued in violation of the City's Zoning Code for several reasons: there was no emergency situation justifying the immediate closure of the business; DPLI and the City did not certify to the Zoning Hearing Board that an emergency existed; and, a stay of the enforcement action should have issued which would have permitted Mother Fletcher's to operate while an appeal was pending. (*Id*. at ¶¶ 127-152).

Plaintiff further alleges that Mother Fletcher's was treated differently than other businesses within the City limits which also operate as restaurants/bars but do not serve food. (Docket No. 67 at ¶¶ 174-180). To this end, Plaintiff points to Howl at the Moon located on 7th Street, downtown and Jimmy D's located at 1707 East Carson Street. (*Id*. at ¶¶ 32-43). Plaintiff contends that the City issued certificates of occupancy for these businesses indicating that each were authorized to use the properties as a restaurant but they do not serve food or have a food menu. (Docket Nos. 67-3, Ex. "C"; 67-4, Ex. ("D"). Rather, both Howl at the Moon and Jimmy D's are bars that use advertisements promoting a party atmosphere and the sale of alcohol. Despite such advertisements and the lack of food service, the City has not initiated any enforcement action against Howl at the Moon or Jimmy D's, as it did against Mother Fletcher's. (Docket No. 67 at ¶¶ 32-43).

As the parties are aware, the Court conducted an evidentiary hearing in September of 2016 on Plaintiff's motions for temporary restraining order and preliminary injunction. (Docket Nos. 16; 17). The Court issued a Memorandum Opinion on September 16, 2016 denying

Plaintiff's motions and dismissing its § 1983 procedural and substantive due process claims, without prejudice, because Plaintiff filed this federal lawsuit prior to pursuing necessary proceedings before the Zoning Board. (Docket No. 22).

A few weeks after this Court's ruling, on September 30, 2016, Plaintiff appealed the Stop Work Order to the Zoning Board. (Docket No. 28 at ¶¶ 98-101). Plaintiff claims that there is no mechanism for an appeal to be expedited before the Zoning Board. (*Id.* at ¶ 100). After a stipulation was reached, Plaintiff filed an Amended Complaint with this Court on November 17, 2016. (Docket Nos. 27; 28). In its Amended Complaint, Plaintiff raised five claims under 42 U.S.C. § 1983, i.e., procedural due process; substantive due process; equal protection; excessive fines clause; and an unreasonable search and seizure claim. (Docket No. 28). Plaintiff specifically challenged the Zoning Board's act of scheduling the hearing on February 2, 2017 as a violation of its procedural due process rights. (*Id.* at ¶¶ 99-100). Despite this contention, Plaintiff agreed to a stipulation and two extensions of time for Defendants to respond to its Amended Complaint beyond the date of the hearing before the Zoning Board. (Docket Nos. 30-31; 36-39). Defendants adhered to that deadline and moved to dismiss Plaintiff's Amended Complaint on February 17, 2017. (Docket Nos. 42-43). The Court then granted numerous consented-to extensions of time for the parties to brief Defendants' motion. (*See* Docket Nos. 46; 49; 52). After considering all of the parties' submissions, (*see* Docket Nos. 47; 50; 53), the Court entered an Order on May 17, 2017 staying this federal case because the zoning dispute had not yet been resolved by the Zoning Board, (Docket No. 54).

The Zoning Board issued a letter to Plaintiff on May 25, 2017 noting that the zoning appeal was "deemed denied" as it had not issued a decision within 45 days and Plaintiff refused a request by the Zoning Board to grant it additional time to complete its decision. (Docket

55-1).  Plaintiff appealed the deemed denial to the Court of Common Pleas but the matter was remanded to the Zoning Board with instructions to prepare findings of fact and conclusions of law supporting its decision.  (Docket No. 67 at ¶¶ 116-18).  The Zoning Board issued its decision on September 28, 2017, ultimately concluding that "[b]ased on the evidence and testimony presented at the hearing, the Board concludes that [DPLI's] issuance of the Cease Operations Order for the unpermitted use of the Subject Property was appropriate."  (Docket No. 56-1 at 8).  The Zoning Board continued that "[DPLI] correctly determined that the use on the Subject Property was not a 'Restaurant,' and did not comply with the requirements of the existing Certificate of Occupancy or the Zoning Code and [DPLI's] issuance of the Cease Operations Order complied with the Zoning Code's enforcement provisions.  The protest appeal is thus DENIED."  (*Id*.).

Plaintiff then appealed this denial to the Court of Common Pleas and the Hon. Joseph James ruled in its favor in a decision dated May 15, 2018.  (Docket No. 57-1).  Judge James held that the Stop Work Order was "set aside" and explained that "[t]he City did not provide sufficient evidence of an emergency where there could be imminent harm giving rise to shutting down the business without prior notice or an opportunity for a hearing."  (*Id*. at 6).  Judge James noted that "[t]here may be a valid question as to whether [Plaintiff's] business is properly operating as a restaurant.  If the City wishes to pursue that, they need to follow the proper procedures."  (*Id*. at 7).  Further, "[t]he City did not provide evidence of dangerous or emergency situations on or around the premises and therefore [Plaintiff] should have been able to operate pending the outcome of a hearing."  (*Id*. at 7-8).  Neither party challenged Judge James' decision by filing a further appeal to the Commonwealth Court.  (Docket No. 58).

After the appeal period expired, Plaintiff sought leave to lift the stay in this matter and as

Defendants did not oppose, the Court lifted the stay on June 26, 2018. (Docket Nos. 59; 63; 64). At the direction of the Court, the parties conferred and filed a Joint Status Report for the filing of an amended pleading and response thereto. (Docket 65). Plaintiff filed its Second Amended Complaint on July 17, 2018 bringing § 1983 claims against Defendants, i.e., procedural due process; substantive due process; equal protection; excessive fines clause; and an unreasonable search and seizure claim. (Docket No. 67). Defendants filed their motion to dismiss and supporting brief on August 20, 2018. (Docket Nos. 68, 69). Plaintiff responded with its Brief in Opposition on September 7, 2018. (Docket No. 70). Defendants declined to file a Reply Brief by the Court's deadline of September 21, 2018. (*See* Docket No. 44). As no further briefing has been submitted and oral argument has not been requested by the parties, the instant motion is ripe for disposition. *See* FED. R. CIV. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

## III. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, it is "not

7

compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the Court should assume the veracity of all well-pled factual allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).[2]

---

[2]     The Court notes that in ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). An exception to this general rule is "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "items subject to judicial notice," without converting the motion to dismiss into one for summary judgment. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quotation omitted). Here, the parties reference certain "testimony" in their respective briefs from either this Court's hearing or the hearing before the Zoning Board. (*See* Docket Nos. 69; 70). Neither have been considered as they are outside the pleadings. The Court further notes that Judge James' decision is attached to Plaintiff's Second Amended Complaint and the Zoning Board's decisions have been filed of record and are indisputably authentic documents upon which Plaintiff's claims rely. *See Mayer*, 605 F.3d at 230.

IV. DISCUSSION

Plaintiff's federal constitutional claims are brought pursuant to 42 U.S.C. § 1983, which provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. This statutory provision "does not create substantive rights," but instead "provides a remedy for the violation of rights conferred by the Constitution or other statutes." *Maher v. Gagne*, 448 U.S. 122, 129, n. 11, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). In order to establish a claim under the statute, a plaintiff "'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Thus, a plaintiff cannot prevail without establishing an underlying violation of a federal constitutional or statutory right. *Collins v. City of Harker Heights*, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (remarking that § 1983 "does not provide a remedy for abuses that do not violate federal law"). "Section 1983 'itself contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Bd. of Cty. Comm's v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

As noted, Plaintiff has set forth § 1983 claims alleging violations of its rights under the

Fourteenth Amendment (procedural due process, substantive due process, and equal protection); Fourth Amendment (unlawful search); and Eighth Amendment (excessive fines). (Docket No. 67). Defendants have moved to dismiss each of these claims and Mariani asserts that he is entitled to qualified immunity shielding him from Plaintiff's claims, all of which Plaintiff naturally opposes. (Docket Nos. 68-70). Having carefully considered the parties' arguments, the Court agrees with Defendants that Plaintiff's claims are subject to dismissal under Rule 12(b)(6). The Court now explains its rationale as to why dismissal is appropriate for each cause of action, starting with the due process claims.

### A. Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law ...." U.S. Const., Amend. XIV, § 1. This constitutional provision provides individuals with "both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). "[B]y barring certain government actions regardless of the fairness of the procedures used to implement them," the Due Process Clause "serves to prevent governmental power from being used for purposes of oppression." *Daniels*, 474 U.S. at 331, 106 S.Ct. 662 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 277, 18 How. 272, 277, 15 L.Ed. 372 (1856)). "By requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property, the Due Process Clause promotes fairness in such decisions." *Daniels,* 474 U.S. at 331, 106 S.Ct. 662. The "substantive" and "procedural" requirements of the Due Process Clause are attributable to these distinct legal principles. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Plaintiff claims that its rights to procedural and substantive due process were violated by

Defendants' actions.  (Docket No. 67).  The Court discusses the deficiencies as to each claim, in turn.

### 1.  Procedural Due Process Claim

"A procedural due process claim is subject to a 'two-stage' inquiry: (1) whether the plaintiff has 'a property interest protected by procedural due process,' and (2) 'what procedures constitute "due process of law."'" *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003)).  "In order to establish a procedural due process violation, the plaintiff must show that 'the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.'" *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 122 (3d Cir. 2018) (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003). "[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Id.* (quoting *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F.Supp.2d 389, 397-98 (E.D. Pa. 2012)).

Initially, Plaintiff has sufficiently alleged that it has a protected property interest in that it has a possessory interest in the commercial property it leased, 2200 East Carson Street, which was the subject of the challenged Stop Work Order.  *Cf. Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) ("ownership is a property interest worthy of [ … ] due process protection."); *Caldwell v. Twp. of Middletown*, No. CIV.A. 13-762, 2013 WL 6210433, at *5 (E.D. Pa. Nov. 26, 2013) (citations omitted) ("It is well established law that 'possessory interests in property invoke procedural due process protections.'").  However, taking all of Plaintiff's well-pled allegations as true and resolving all reasonable inferences in its favor, the Court concludes that Plaintiff has

failed to state a plausible claim that its procedural due process rights were violated.

Plaintiff contends that its rights were violated in three ways: (1) it was not provided with a pre-deprivation hearing; (2) the post-deprivation hearing which was provided was insufficient due to delays in the process; and, (3) the Defendants failed to adhere to the stay provisions set forth in § 923.02.G of the Zoning Code which would have permitted Mother Fletcher's to remain open while the matter was litigated before the Zoning Board. (Docket No. 70 at 8-10). In support of these theories, Plaintiff relies heavily upon Judge James' ultimate determination that the Stop Work Order was "set aside" and that such order should have been stayed during the pendency of the Zoning Board proceedings. (*Id*.). Defendants maintain that Plaintiff has failed to demonstrate that there has been a procedural due process violation. (Docket No. 69). The Court concurs with Defendants' position.

Plaintiff has not cited any authority for the proposition that a pre-deprivation hearing was required prior to the issuance of the Stop Work Order which interfered with its possessory interest in 2200 East Carson Street and ability to operate Mother Fletcher's. (*See* Docket No. 70). To the contrary, the Court of Appeals has "upheld as reasonable Pennsylvania's post-deprivation judicial remedies for challenging administrative land use decisions." *Perano v. Township of Tilden*, 423 F. App'x. 234, 237 (3d Cir. 2011) (citations omitted); *Giuliani*, 726 F. App'x at 122. Those remedies include the filing of an appeal from adverse land use decisions to the Court of Common Pleas, as well as the pursuit of common law tort remedies, and/or mandamus actions against the City, its officials and/or the Zoning Board in the Court of Common Pleas. *See Perano*, 423 F. App'x at 237; *see also Battiste v. Borough of East McKeesport*, 94 A.3d 418 (Pa. Comm. Ct. June 3, 2014) (stop work order challenged via mandamus petition filed in court of common pleas); *Kapish v. Advanced Code Grp.*, No.

3:15CV278, 2015 WL 5124143, at *6 (M.D. Pa. Sept. 1, 2015) (citing *Battiste*) ("Additionally, plaintiff may assert claims against the Board and zoning enforcement officers in the Court of Common Pleas. Such claims include, but are not limited to: (1) rescission of the stop work order; (2) promissory estoppel and (3) mandamus relief."). In this Court's estimation, Plaintiff has not established that any of these judicial remedies were not available to it and a pre-deprivation hearing was not required under the circumstances. *Id.*

Next, Plaintiff's complaints about the delays in the state processes before the Zoning Board and the Court of Common Pleas neither render those procedures patently inadequate nor demonstrate a constitutional violation for several reasons. *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116(3d Cir. 2000)) (a party cannot avoid the finality rule without making a concrete showing that the available post-deprivation procedures are "'patently inadequate.'").

First, Plaintiff's successful appeal to the Court of Common Pleas establishes only a violation of state law which is insufficient, by itself, to maintain a federal constitutional claim. *See e.g., Whittaker v. Cty. of Lawrence*, 674 F. Supp. 2d 668, 695 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2011) (citation omitted) ("The Plaintiffs cannot allege a violation of the Fourteenth Amendment simply by averring that the actions of the Defendants were not in conformity with Pennsylvania law."); *Prosperi v. Twp. of Scott*, Civ. A. No. 06-501, 2006 WL 2583754, at *4 (W.D. Pa. Sept. 7, 2006) ("In this case, the plaintiffs utilized the state's judicial mechanism for challenging the decisions of Scott Township and Carnegie Borough, and they prevailed in obtaining the permits they sought. Having been afforded reasonable remedies by the state to rectify the acts of the municipalities, the plaintiffs were provided adequate procedural due process.").

Second, Plaintiff pleads that the initial period of delay (from September 30, 2016 to February 2, 2017) in scheduling the hearing is attributable to the fact that the Zoning Board does not have any emergency or expedited hearing process. (Docket No. 67 at ¶ 100). However, Plaintiff has not proven that other judicial remedies available in state court, i.e., a mandamus or a civil action for injunctive relief against the Zoning Board, were not available for it to challenge the delayed scheduling of the hearing. *See Perano*, 423 F. App'x. at 237; *Kapish*, 2015 WL 5124143, at *6. Further, Plaintiff did not attempt to pursue such relief in state court. (*See* Docket No. 67).

Third, Plaintiff's delay claim is undermined because it raised a federal constitutional claim complaining that the February 2, 2017 date of the hearing violated its rights in the Amended Complaint filed in this Court in November of 2016, (Docket No. 28), then proceeded to enter into numerous stipulations and agreements with Defendants such that their motion to dismiss was not even filed until after the hearing before the Zoning Board had occurred. (Docket Nos. 30-31; 36-39; 42-43). This Court then promptly stayed the matter due to the ongoing proceedings. (Docket No. 54).

Fourth, our Court of Appeals has ruled that delays in administrative proceedings which were substantially equivalent to the delay encountered by Plaintiff here were not violative of due process. *See Fanti v. Weinstock*, 629 F. App'x 325, 331 (3d Cir. Oct. 9, 2015) (seventeen-month delay in administrative process concerning denial of public contract did not violate due process); *Ritter v. Cohen*, 797 F.2d 119, 124 (3d Cir. 1986) ("the mere allegation of a projected twenty-month delay by an agency, although hardly to be encouraged as a matter of administrative practice, does not state a constitutional violation.").

Finally, Plaintiff's arguments concerning the Defendants' refusal to adhere to the stay

provisions under § 923.02.G. of the Zoning Code must be rejected for the same reasons. (Docket No. 70). Again, Judge James' finding that the City violated the Zoning Code by not staying enforcement of the Stop Work Order pending the proceedings before the Zoning Board establishes only a violation of state law and is not a *per se* violation of the due process clause under the Fourteenth Amendment. *See Whittaker*, 674 F. Supp. 2d at 695. Moreover, Plaintiff has not pled that it availed itself of state remedies, such as a mandamus action, to enforce its right to a stay under § 923.02.G in state court. *See Perano*, 423 F. App'x. at 237; *Kapish*, 2015 WL 5124143, at *6. Instead of seeking relief in state court, Plaintiff sought to federalize its claim by bringing it in this Court but did not diligently press that claim forward nor challenge this Court's stay in favor of the zoning proceedings and any appeal to the Court of Common Pleas. *See* Docket Report, Civ. A. No. 16-1393. All told, Plaintiff was afforded sufficient due process for its administrative zoning dispute in the state courts and its victory there does not demonstrate a procedural due process violation. *See Prosperi*, 2006 WL 2583754, at *4.

Based on the foregoing, Defendants' motion to dismiss Plaintiff's procedural due process claim is granted and Count I will be dismissed, with prejudice.

## 2. Substantive Due Process

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the ... due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400–02 (3d Cir. 2003)). As this Court has noted previously,

> "Land use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402. Rather, the

government officials' conduct must "shock the conscience," a demanding standard reserved for only "the most egregious official conduct." *Vorum v. Canton Township*, 308 Fed.Appx. 651, 654 (3d Cir. 2009) (not precedential). The test to determine whether official conduct shocked the conscience is "not precise" and "varies depending on the factual context." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quotations omitted). To this end, conduct such as self-dealing, corruption of government officials, intentional bias against an ethnic group, interference with constitutionally protected activities or other sufficiently egregious conduct has been held to constitute a violation of substantive due process. *Id*. On the other hand, actions by government officials that violate state law in a manner that rises to the level of negligence or is akin to state law tort standards does not shock the conscience. *Id*. And, of course, actions by government officials which further a legitimate government purpose would not shock the conscience. *Id*. The Court of Appeals has recognized that the conscience-shocking test is "designed to avoid converting federal courts into super zoning tribunals." *Id*.

*Cranberry Promenade, Inc. v. Cranberry Twp.*, Civ. A. No. 09-1242, 2011 WL 13257871, at *18 (W.D. Pa. Dec. 29, 2011). Further,

every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."

*Id*. (quoting *United Artists*, 316 F.3d at 402, *which quoted Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). "The point at which conduct becomes conscience-shocking for constitutional purposes is a question of law for a court to decide, not a question of fact amenable to resolution by a jury." *Whittaker v. County of Lawrence*, 674 F.Supp.2d 668, 698 (W.D. Pa. Dec. 7, 2009) (citations omitted).

Defendants argue that Plaintiff's substantive due process claim is subject to dismissal because it has failed to plead allegations sufficient to demonstrate conscience shocking behavior by governmental officials. (Docket No. 69). Plaintiff counters that the nature of the late-night

raid on Mother Fletcher's by law enforcement and City officials demonstrates their improper motive in shutting down the business and that discovery will reveal additional communications substantiating their substantive due process claim. (Docket No. 70).

After taking Plaintiff's well-pled allegations as true and viewing all reasonable inferences in its favor, the Court agrees with Defendants that Plaintiff has failed to sufficiently allege a substantive due process violation. In this regard, Plaintiff has simply not alleged that the City, DPLI, Mariani or the Zoning Board engaged in the type of egregious misconduct which would prove a substantive due process claim such as fraud, self-dealing, corruption, intimidation of ethnic groups, or interference with constitutional rights. *See Eichenlaub*, 385 F.3d at 285. Rather, Plaintiff's averments amount to, at most, a demonstration of errors by City officials and the Zoning Board in applying local zoning laws, *see Cranberry*, 2011 WL 13257871, at *19 (a legal dispute between the township and developer concerning the application of zoning laws does not shock the conscience), and a negligent misallocation of police resources by using an unnecessary number of officers when entering the business on September 4, 2016, *see Eichenlaub*, 385 F.3d at 286 (dismissing substantive due process claim asserting "that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled" the property owners).

Therefore, Defendants' motion to dismiss Plaintiff's substantive due process claim is granted, and Count II will be dismissed, with prejudice.

*B. Equal Protection Claim*

The Equal Protection Clause provides that "No State shall ... deny to any person within

its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. The Equal Protection Clause "creates no substantive rights." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). "Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.* Plaintiff's equal protection claim relies on a "class of one" theory as set forth in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under the "class of one" theory, Plaintiff has the burden to demonstrate that it was "treated differently from others similarly situated and that there was no rational basis for such disparate treatment." *Whittaker*, 674 F.Supp.2d at 691-92 (emphasis in original).

"To establish that entities were similarly situated for purposes of an equal protection claim, they must be 'alike in all relevant aspects.'" *Cole v. Encapera*, --- F. App'x ----, 2018 WL 6822298, at *3 (3d Cir. Dec. 28, 2018) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted)). Plaintiff must also show that it was subject to "intentionally different treatment [that] is 'irrational and wholly arbitrary.'" *Eichenlaub*, 385 F.3d at 286 (quoting *Village of Willowbrook*, 528 U.S. at 564). The Court of Appeals has recognized that "[t]he 'irrational and wholly arbitrary' standard is doubtless difficult for a plaintiff to meet in a zoning dispute." *Eichenlaub*, 385 F.3d at 287. Further, "[t]hese challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Highway Materials, Inc. v. Whitemarsh Tp.*, 386 F. App'x. 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The Court of Appeals "'do[es] not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation.'" *Highway Materials*, 386 F. App'x at 259 (quoting *Eichenlaub*, 385 F.3d at 287)).

Defendants assert that Plaintiff's equal protection claim fails because Mother Fletcher's

was a unique business and, thus, is not similarly situated to any other entities. (Docket No. 69).

Plaintiff retorts that its business is similarly situated to Howl at the Moon and Jimmy D's

because those entities operate as "Restaurant (General)" under the Zoning Code and other,

unnamed bars that operate as restaurants and do not serve food. (Docket No. 70). The Court

once again agrees with Defendants that Plaintiff has failed to state a plausible equal protection

claim against Defendants.

Viewing Plaintiff's allegations as true and drawing all reasonable inferences in its favor,

Plaintiff has not sufficiently established that it is alike in all relevant respects to Howl at the

Moon, Jimmy D's or any other bar that does not serve food. Relevant here, "the first inquiry a

court must make in an equal protection challenge to a zoning ordinance is to examine whether

the complaining party is similarly situated to other uses that are either permitted as of right, or by

special permit, in a certain zone. If, and only if, the entities are similarly situated, then the city

must justify its different treatment of the two." *Congregation Kol Ami v. Abington Twp.*, 309

F.3d 120, 137 (3d Cir. 2002). It is this Court's opinion that Plaintiff's Second Amended

Complaint does not pass this test because the properties are all subject to different zoning

requirements, located in different parts of the City, and the types of businesses operated at those

locations are distinct. *Id.*

To this end, the authorized use at 2200 East Carson Street is set forth in a special

exemption which is unique to that particular property and was granted by the Zoning Board in

1984 authorizing the use of the first floor and basement of the property as a bar and restaurant

with a condition of no live entertainment. (*See* Docket Nos. 67-1 (Ex. "A" Certificate of

Occupancy); 67-2 (Ex. "B", Special Exemption)). In contrast, the certificates of occupancy for

the properties where Jimmy D's and Howl at the Moon are located do not reference the same

special exemption, making them subject to different zoning requirements. (*See* Docket No. 67-3, Ex. "C" ("Bar and restaurant on first and second floor with third floor sealed off.") and Docket No. 67-4, Ex. "D" ("Use of 6,200 Sq. Ft on 1st Floor as Restaurant (General) for Capacity Less than 500 Persons")). The certificates of occupancy for Jimmy D's and Howl at the Moon also make clear that they were applied for by the business owners themselves, i.e., the listed owner for 1707 E. Carson Street was James Demauro, a/k/a "Jimmy D" and the listed lessee for 125 7th St. was Howl at the Moon LLC. (Docket Nos. 67-3; 67-4). Hence, the DPLI presumably approved the uses at those properties whereas Plaintiff opened Mother Fletcher's under the existing certificate of occupancy from the prior tenant, Margaritaville, which had been closed down as a nuisance bar, without separately applying for zoning approval of its use as an under-21 dance club. (*See* Docket No. 67 at ¶¶ 13; 23).

The three properties are also not in the same location of the City. In this regard, while Jimmy D's is located in the same general area on the South Side, it is still five blocks away from 2200 East Carson Street and Howl at the Moon is across the river in the Cultural District of downtown Pittsburgh. (Docket No. 67 at ¶¶ 32-43). Further, both Howl at the Moon and Jimmy D's are bars, primarily selling alcoholic beverages to individuals over the age of 21. (*Id.*). On the other hand, Plaintiff advertised Mother Fletcher's as an "under-21 party joint," and did not sell alcohol to its underage patrons. (*Id*. at ¶¶ 15-16). In all, the Court finds that Plaintiff has failed to sufficiently allege that it was similarly situated to Howl at the Moon and Jimmy D's such that equal treatment in zoning enforcement was not required. *See Cole,* 2018 WL 6822298, at *3; *Congregation Kol Ami,* 309 F.3d at 137. Plaintiff likewise has not demonstrated that Mother Fletcher's is similarly situated to any bar operating in the City that does not serve food for the simple reason that it is not a bar. *Id.*

Even assuming that Plaintiff had shown that the properties were similarly situated, it has not met its more difficult burden to demonstrate that the enforcement action initiated against Plaintiff and Mother Fletcher's was "irrational and wholly arbitrary." *Eichenlaub*, 385 F.3d at 287. Again, Plaintiff opened Mother Fletcher's without obtaining zoning approval in reliance on a previously issued certificate of occupancy authorizing the first floor and basement of the property to be used as a restaurant and bar with a condition of no live entertainment. (Docket No. 67 at ¶¶ 23-27). Instead, Plaintiff opened the business based on its owner's "belief" that all zoning requirements were satisfied. (*Id*. at ¶¶ 18; 28). Plaintiff advertised the business as an "under-21 party joint" such that city officials acted rationally in questioning whether the business was operating consistent with the approved use set forth in the special exemption as a bar and restaurant with no live entertainment. (Docket No. 67-1; 67-2). On the other hand, Jimmy D's and Howl at the Moon obtained zoning approval from DPLI to use those properties as bars and restaurants, as is indicated on their certificates of occupancy. (Docket Nos. 67-3; 67-4). Hence, there is a rational basis for the enforcement action against Plaintiff's "under-21 party joint" vis-à-vis the two cited properties which had been issued certificates of occupancy authorizing uses as bars and restaurants. *See Highway Materials,* 386 F. App'x. at 259. In addition, the numerous differences between the zoning, location and business operations of the three properties highlighted above lend further credence to this Court's decision that Plaintiff has failed to plead that Defendants acted irrationally and in a wholly arbitrary manner. *Id.*

Therefore, Defendants' motion to dismiss Plaintiff's equal protection claim is granted and Count IV is dismissed, with prejudice.

### C. *Fourth and Eighth Amendment Claims*

Next, Defendants move to dismiss Plaintiff's Fourth Amendment and Eighth Amendment

claims at Counts III and V of its Second Amended Complaint. (Docket No. 69). Plaintiff has not addressed Defendants' well-supported arguments in its Brief in Opposition. (Docket No. 70). The Court finds that Plaintiff has abandoned or waived these claims given the lack of a response thereto and that they are otherwise subject to dismissal for the reasons articulated by Defendants and the caselaw cited therein. *See e.g.*, *Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *4 (D.N.J. Nov. 29, 2018) (further quotation omitted) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."). Yet, the Court briefly notes the following.

With respect to the Eighth Amendment claim under the excessive fines clause, Plaintiff has not countered the well-taken assertion that such a claim is not viable under these circumstances and its allegations, taken as true, fail to state a claim for relief under this theory. *See Recreational Developments of Phoenix, Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1101 (D. Ariz. 1999) ("Plaintiffs have offered no authority for the notion that the Excessive Fines Clause applies to non-forfeiture civil cases in which the penalty is closure of a business rather than payment of fines to the government."); *see also Ebert v. Twp. of Hamilton*, Civ. A. No. 15-7331, 2018 WL 3772677, at *10 (D.N.J. Aug. 9, 2018) (Excessive fines clause only applies to fines imposed as punishment for a criminal offense). Thus, Count V must be dismissed for failure to state a claim.

Plaintiff also does not contest Defendants' argument that it lacked a reasonable expectation of privacy in 2200 East Carson Street because Mother Fletcher's was open to the public at the time of the entry by Mariani and the police officers. *See e.g., Maryland v. Macon*, 472 U.S. 463, 469 (1985) (business owner "did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business."); *United States*

*v. Watson*, 244 F. App'x 484, 488 (3d. Cir. 2007); (defendant "had no reasonable expectation of privacy because the officers entered the public store where she was working through unlocked doors, during regular business hours."); *Christian v. Orr*, Civ. A. No. 08-2397, 2011 WL 710209, at *11 (E.D. Pa. Mar. 1, 2011), *aff'd as amended*, 512 F. App'x 242 (3d Cir. 2013) ("There is generally no reasonable expectation of privacy in physical areas of a business where the public is routinely invited to enter and to transact business."). Thus, Plaintiff has failed to state a claim in Count III that its Fourth Amendment rights were violated by the entry and search of the public areas of the premises. *Id.*

Accordingly, Counts III and V of Plaintiff's Amended Complaint are dismissed, with prejudice, for failure to state a claim.

### D. Qualified Immunity as to Mariani

Mariani separately moves to dismiss the claims against him on the basis of qualified immunity. (Docket No. 69). While Plaintiff opposes such defense, (Docket No. 70), the Court finds that qualified immunity is appropriately applied as to Mariani in this case.

As this Court recently articulated,

> Qualified immunity […] attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. ──, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018) (per curiam) (citations omitted); *Bland v. City of Newark*, 900 F.3d 77 (3d Cir. 2018); *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015); *El v. City of Pittsburgh*, No. CV 15-834, 2018 WL 3707420, at *9 (W.D. Pa. Aug. 3, 2018).
>
> …
>
> In resolving questions of qualified immunity, "courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *Bland*, 900 F.3d at 83 (citing *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016)). A court may evaluate

these two prongs "in the order [it] deem[s] most appropriate for the particular case before [it]." *Santini*, 795 F.3d at 418 (citation omitted).

*Kelley v. O'Malley*, 328 F. Supp. 3d 447, 454 (W.D. Pa. Sept. 13, 2018).

In its Brief, Plaintiff suggests that it is premature to evaluate qualified immunity at this stage of the case and that Mariani did not meet his burden to demonstrate the applicability of such affirmative defense. (Docket No. 70). Plaintiff is wrong on both points. The Supreme Court "stresses the importance of resolving immunity questions at the earliest possible stage in litigation because the immunity is an immunity from suit that is effectively lost if a case is erroneously permitted to go to trial." *Kelley*, 328 F. Supp. 3d at 454 (internal quotations omitted). Thus, considering the defense at this stage is appropriate and after evaluating same, the Court concludes that Mariani is entitled to qualified immunity under both prongs of the analysis.

As the Court has already explained, Plaintiff has failed to sufficiently allege that Mariani violated any of its constitutional rights such that all of the claims against him are subject to dismissal. *See* §§ IV.A-C, *supra*. Qualified immunity attaches on this basis alone. *Bland*, 900 F.3d at 83.

The Court alternatively holds that even if Plaintiff stated plausible claims against Mariani, Plaintiff has simply not shown that the constitutional rights allegedly violated by Mariani were "clearly established" at the time he issued the Stop Work Order on September 4, 2016. *Bland*, 900 F.3d at 83. Indeed, Plaintiff has not pointed to any caselaw, (in this Circuit, the Supreme Court or other Circuits), which places the statutory or constitutional question beyond debate that Mariani's actions violated Plaintiff's constitutional rights. (*See* Docket No. 70). Rather, Plaintiff repeatedly points to Judge James' decision that Mariani and others violated the applicable provisions of the zoning code which, at most, demonstrates a violation of state

law.  (*Id*.).  But, the prevailing caselaw in these types of land use disputes make clear that due process and equal protection claims are difficult to plead in federal court and that proof of a state law violation is not enough to sustain a § 1983 claim.  *See Cranberry Promenade, Inc.*, 2011 WL 13257871, at *18 ("it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.") (citation omitted).  Our Circuit further instructs that District Courts are not to serve as a super-zoning tribunal presiding over routine zoning disputes between municipalities and landowners or lessees, as is the case here.  *See Eichenlaub*, 385 F.3d at 285.

In light of such analysis, the Court holds that Mariani is entitled to qualified immunity and grants Defendants' motion to dismiss the claims against him on this basis as well.

### E.  *Leave to Amend*

The Court's final inquiry is whether the dismissal of the federal claims in Plaintiff's Second Amended Complaint should be with prejudice or without prejudice.  The United States Court of Appeals for the Third Circuit has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002).  "Leave to amend may be denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) and citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).  Here, the Court finds that any further amendment of Plaintiff's claims would be futile given the Court's analysis of the claims set forth above.  *See* § IV.A-D, *supra*.  In addition, Plaintiff has been twice granted leave to file amended pleadings in

this matter and has not affirmatively sought leave to file a third amended complaint nor supplied this Court with a proposed pleading such that leave to amend may be denied on these grounds as well.[3] *See, e.g., U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ...—does not constitute a motion within the contemplation of Rule 15(a).'") (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *McWreath v. Range Res.–Appalachia, LLC*, 645 Fed.Appx. 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend.'") (quoting *Zizic*, 728 F.3d at 243). Accordingly, the Court will dismiss all of Plaintiff's claims, with prejudice.

V.  CONCLUSION

Based on the foregoing, Defendants' motion to dismiss [68] is granted and Plaintiff's Second Amended Complaint will be dismissed, with prejudice. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   January 17, 2019

cc/ecf:  All counsel of record.

---

[3]      The Court notes that Plaintiff has had the benefit of hearings before this Court and the Zoning Board such that it has had more than enough opportunity to develop facts supporting its causes of action.